**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **LAGATHER ANN NELSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **3:07-CV-1007-M** |
| | ) | |
| **CITY OF DALLAS POLICE OFFICERS** | ) | |
| **A. NORDYKE and M. JAMAICA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case was referred to the United States Magistrate Judge for pretrial management. Before the Court for findings and recommendation are the motions for summary judgment filed by Dallas Police Officers Angela Nordyke ("Officer Nordyke") and Miguel Jamaica ("Officer Jamaica") (together, "Defendants"). The time for Plaintiff to respond to the summary judgment motions has expired, and Plaintiff has failed to file responses. After consideration of the entire record, the Court recommends that the District Court grant Officer Nordyke's Motion for Summary Judgment and grant in part and deny in part Officer Jamaica's Motion for Summary Judgment.

Plaintiff is a mentally hanicapped inmate of the Dallas County Jail, proceeding *pro se*. The Court must construe the allegations in the complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam); *Sec. & Exch. Comm'n v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam). The terms of 28 U.S.C. § 1746 govern verification of an unsworn complaint. A plaintiff may declare under penalty of perjury that the factual allegations contained in the pleading are true and correct. *See* 28 U.S.C § 1746. The factual allegations of the verified complaint are endowed with the evidentiary force of an affidavit. *Id.* Plaintiff's answers to the United States Magistrate Judge's questionnaire are likewise endowed with the evidentiary force of an affidavit because they

are verified under penalty of perjury. *See* 28 U.S.C. § 1746. When a *pro se* plaintiff properly executes a complaint or other pleading which calls for a declaration in conformity with 28 U.S.C § 1746, the plaintiff's statements are transformed from mere allegations of a pleading into specific facts as if they were in an evidentiary affidavit. *Searcy v. Cooper*, 2002 WL 535058 (N.D. Tex.), (citing *McNeal v. Macht*, 763 F. Supp. 1458, 1461 (E.D. Wis. 1991)) (citing *Murrell v. Bennett*, 615 F.2d 306, 310 & n. 5 (5th Cir. 1980). Therefore, a plaintiff's failure to proffer evidentiary materials directly in opposition to a defendant's motion does not mandate the entry of summary judgment in favor of the defendant. *Id.*

Plaintiff has filed numerous verified pleadings setting forth the facts underlying her claims (dkt. 1, 9, 10, 13, 18, 22, and 26). She has requested specific discovery (dkt. 22 at 10-11) and has filed correspondence requesting a trial (dkt. 24). In this case, the Court will exercise its discretion to consider Plaintiff's verified pleadings as competent summary judgment proof. *See Bookman v. Shubzda*, 945 F. Supp. 999, 1003 (N.D. Tex. 1996)(Fitzwater, J.); *Skotak v. Tenneco Resins, Inc.*, 935 F. 2d 909, 915 n. 7 (5th Cir. 1992).

Plaintiff sues Defendants under 42 U.S.C. § 1983, alleging federal civil rights claims of unlawful detention, false arrest, and the use of excessive force.[1] Plaintiff also brings pendant state law claims of assault and battery, false arrest, and false imprisonment. (Pl.'s Orig. Compl.) Defendants contend that summary judgment is proper because: (1) they had probable cause or reasonable suspicion to detain Plaintiff; (2) they had probable cause to arrest Plaintiff; (3) the force they used against Plaintiff did not rise to the level of a constitutional violation; (4) the doctrine of qualified immunity

---

[1] Plaintiff also alleged that Defendant Police Chief David Kunkle was negligent, but the District Court granted Defendant Kunkle's Motion to Dismiss.

shields Defendants from liability with respect to Plaintiff's federal claims; and (5) Defendants are not liable on Plaintiff's state law claims.  (Defs.' Mots. at 2.)

## Undisputed Facts

Officer Jamaica was working as a plain clothes vice officer with Officer Nordyke on August 18, 2006, at about 2:15 p.m.  (Jamaica App. at 1)  Officer Jamaica was driving an unmarked pickup truck and stopped at 300 Fran Street, Dallas, where he engaged in conversation with Plaintiff, who appeared to be a prostitute.  (*Id*.)  During the conversation, Plaintiff showed Officer Jamaica her breasts and knowingly agreed to engage in sexual intercourse with him in exchange for ten dollars.  (*Id*.)  Plaintiff got into the pickup truck with Officer Jamaica, and as he drove to a nearby parking lot, Plaintiff pulled up her dress and showed her genitalia to Officer Jamaica.  (*Id*.)  Officer Jamaica stopped the pickup truck in a parking lot at 100 S. Corinth Street, Dallas.  (*Id*.)  Dallas Police Officers Saul Monsisvais and Nordyke approached the pickup truck and assisted in arresting Plaintiff for prostitution.  (*Id*.)  It is at this point that Plaintiff's and Defendants' versions of the facts significantly diverge.  However, the parties agree that after the disputed incident in question, Plaintiff was convicted of prostitution and pursuant to a plea agreement, pled guilty to an assault on a public servant.  The assault occurred on August 18, 2006, the date of Plaintiff's arrest.

## Disputed Facts

According to Plaintiff's verified pleadings, Plaintiff was arrested and handcuffed in a parking lot.  (Dkt. 9).  Plaintiff admits that she was "emotionally distraught" during the initial arrest in the parking lot.  (Dkt. 22).  After Plaintiff was handcuffed, she was then seated in the back of a police car. (Dkt. 9).  Officer Nordyke sat in the backseat with Plaintiff, while Officer Jamaica took the driver's seat.  (*Id.*)    Then Officer Nordyke began completing paperwork for Plaintiff's arrest.  (Jamaica

App. at 1.)[2] Plaintiff claims she begged and pleaded with Officers Nordyke and Jamaica to give her one more chance and not take her to jail. (Dkt. 9 at 2.) Plaintiff alleges that at this point, without provocation, Officer Nordyke started kicking Plaintiff in her side and reached over her to unlock the door for Officer Jamaica. (*Id.*) In her pleadings, Plaintiff explicitly denies assaulting Officer Nordyke, even though this is not plausible because the record shows that Plaintiff pled guilty to assault on a public servant. (Dkt. 22 at 10, Nordyke App. at 7-12.) Plaintiff alleges that she restrained herself after the unprovoked attack, sliding into a fetal position in the back seat. (Dkt. 22 at 10.) The officers then got out of the car, "harassed and humiliated" her, and Officer Jamaica "slammed Plaintiff head first on the pavement." (Dkt. 22 at 4.) His action resulted in a wound to Plaintiff's head. (Dkt. 9 at 1.) Defendants called an ambulance and paramedics treated Plaintiff's wound. (Dkt. 1 at 4.) Plaintiff alleges that the mug shot photographs that were taken during her booking at the jail show that her head was wrapped up like a mummy. (Dkt. 9 at 2.)

Defendants, on the other hand, contend that while Plaintiff was seated in the backseat of the squad car, Plaintiff suddenly, and without provocation, twisted around and reached behind to unlock the door, and began to scream and repeatedly and violently kick at Nordyke. (Jamaica App. at 2.) They claim Plaintiff attempted to kick and bite Nordyke, and that Nordyke's right ankle was cut by Plaintiff's kicks. (*Id.*) Officer Jamaica claims that he got out of the vehicle and ran around the vehicle to pull Plaintiff out, but due to Plaintiff's violent outburst and assault, she grazed her forehead when he pulled her out of the squad car, and she fell to the ground. (*Id.*) Officer Jamaica contends that he called the Dallas Fire Department paramedics to examine Plaintiff and Nordyke.

---

[2] The affidavit of Officer Jamaica is the mirror image of Officer Nordyke's affidavit.

(*Id.*)  After the paramedics rendered first aid to both Plaintiff and Officer Nordyke, Plaintiff was taken to the Dallas County Jail for booking.  (Id.)

### Standard of Review

Summary judgment is appropriate when the pleadings and the evidence show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986); *Melton v. Teachers Ins. & Annuity Assoc. of Am.*, 114 F.3d 557, 559 (5th Cir. 1997).  The applicable substantive law identifies those facts that are material, and only disputes about material facts will preclude the granting of summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  There is a genuine issue of fact if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.  *Society of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners, Inc.,* 41 F.3d 223, 226 (5th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of fact for trial.  *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 712 (5th Cir. 1994).  Where the nonmoving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing an absence of evidence in support of the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  Once a properly supported motion for summary judgment is presented, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.  *Elliott v. Lynn*, 38 F.3d 188, 190 (5th Cir. 1994) (citing *Anderson*, 447 U.S. at 249).  Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex*, 477 U.S. at 322. The Court will consider the record in the light most favorable to Plaintiff. *Taita Chem. Co. v. Westlake Styrene Corp.,* 246 F.3d 377, 385 (5th Cir. 2001). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion must be denied. *Anderson*, 477 U.S. at 250.

## Analysis

### Wrongful Detention and Wrongful Arrest

"Plaintiff does not deny that she agreed to have sex with a man." (Dkt. 22 at 7.) According to Plaintiff, the man asked how much it was, and she said, "one dollar." (Dkt. 9 at 2.) Plaintiff has not disputed the fact that she was convicted of prostitution. (Jamaica App. at 2.) If Defendants illegally detained and wrongfully arrested Plaintiff on August 18, 2006 for prostitution, Plaintiff's claims would not accrue until her conviction for prostitution had been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Similarly, Plaintiff's state law claims of false arrest and false imprisonment have not yet accrued. *Id*. Accordingly, Defendants are entitled to summary judgment on Plaintiff's § 1983 claims based upon unlawful detention and false arrest, and her state law claims of false arrest and false imprisonment.

### Excessive Force Claim Against Officer Nordyke

Pursuant to a plea agreement, Plaintiff pled guilty to assaulting a public servant on August 18, 2006. (Jamaica App. at 11-12.) A Judgment of Conviction shows that Plaintiff was sentenced to two years in the Institutional Division of the Texas Department of Criminal Justice. (*Id*. at 8.) Defendants aver that Plaintiff's conviction was for her assault on Officer Nordyke. (*Id*. at 2.) Plaintiff has not shown that this assault conviction has been "reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *See Heck*, 512 U.S. at 486-87. Accordingly, Plaintiff's § 1983 claim based on Officer Nordyke's use of excessive force against her has not yet accrued. *Id.* For the same reasons, her state law assault and battery claims against Officer Nordyke have not yet accrued. *Id.*

In sum, all of Plaintiff's claims against Officer Nordyke are *Heck*-barred. Nordyke's motion for summary judgment should be granted and the claims dismissed until *Heck* conditions are met. Officer Jamaica's motion for summary judgment should be granted with respect to Plaintiff's civil rights claims of false arrest and false detention and the corresponding pendant state law claims because those claims are *Heck*-barred, as well, and they should be dismissed until *Heck* conditions are met.

## Excessive Force Claim Against Officer Jamaica

### Qualified Immunity

With respect to Plaintiff's claim of excessive force, Officer Jamaica contends that he is entitled to summary judgment based upon the defense of qualified immunity. Qualified immunity protects public officials in the course of performance of their discretionary duties unless their conduct violates "clearly established [federal] statutory or constitutional [law] . . . of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Anderson v. Creighton,* 483 U.S. 635, 639-40 (1987). The qualified immunity defense was intended to balance the need to stem abuses of office with the expense of litigation, the diversion of official energy from pressing public issues, and deterrence from government service. *Harlow,* 457 U.S. at 818. *See also Scheuer v. Rhodes,* 416 U.S. 232, 247 (1974). It protects these competing interests while allowing trial courts to resolve "insubstantial claims" before discovery and trial. *Harlow,* 457 U.S. at 818. *See also Elliott v. Perez,*

751 F.2d 1472, 1478 (5th Cir.1985) (noting *Harlow* recognized officials are entitled to be free from "overwhelming preliminaries of modern litigation" until the court considers the right to immunity).

The threshold inquiry for the court in ruling on the issue of qualified immunity is as follows: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show theofficer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Then, the Court must determine whether the official's conduct was objectively reasonable under the circumstances. *See Siegert*, 500 U.S. at 231. Excessive force may violate the Constitution if a plaintiff proves: (1) an injury; (2) which resulted directly and only from the use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable. *Span v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993); *see also Heitschmitdt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998). Objective reasonableness of the officers' conduct must be gauged by the totality of the circumstances. *Stroik v. Ponseti*, 35 F.3d 155, 158 (5th Cir. 1994).

## Constitutional Violation

Plaintiff declares under penalty of perjury that by the time Officer Jamaica jumped out of the car and came to pull her out of the back seat, she was "just crying." (Dkt. 9 at 3.) According to Plaintiff, Officer Nordyke reached across her and unlocked the door; and Officer Jamaica pulled her out of the car and slammed her head into the cement while she remained docile and handcuffed. (*Id*.) She alleges that her head burst open and started bleeding. (*Id*.) Paramedics were called and her head was bandaged. According to Plaintiff, she looked like a mummy when her mug shot was taken. (*Id*. at 2.)

On the other hand, Officer Jamaica's affidavit states that "due to Nelson's violent outburst and assault, she grazed her forehead when I pulled her out of the vehicle, and she fell onto the ground." (Jamaica's App. at 2.) Taking Plaintiff's version of the facts as true, she has met her burden to allege a violation of her clearly-established right under the Fourth Amendment to be free from the use of excessive force. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

### Whether the Officer's Conduct was Objectively Reasonable

Taking Plaintiff's sworn pleadings and viewing them in the light most favorable to the non-moving party, the Court finds that they raise a fact question as to whether Officer Jamaica used excessive force in removing Plaintiff from the car after she assaulted Officer Nordyke. No reasonable officer would believe that it was lawful to forcefully slam a docile, handcuffed detainee head first into the concrete pavement of the parking lot. A factual dispute exists over whether Plaintiff's injury resulted from her "out-of-control" behavior when Officer Jamaica attempted to remove her from the car. In other words, qualified immunity depends upon whether the trier of fact believes Plaintiff or Officer Jamaica. Thus, the material issue of the objective reasonableness of Officer Jamaica's actions exists, and, until resolved, leaves the issue of qualified immunity for later resolution. Officer Jamaica is not entitled to summary judgment on Plaintiff's excessive force claim.

Officer Jamaica argues that Plaintiff suffered only *de minimis* injuries. A prisoner's civil rights action requires an injury that is more than *de minimis,* but need not be significant. *See e.g., Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). It is undisputed that after the incident in question, Plaintiff's head was bleeding, paramedics attended to her, and they bandaged her head. Thus, Officer Jamaica's claim that Plaintiff's injuries are *de minimis* is controverted.

Due to discrepancies between the parties' versions of events, the Court finds there are genuine issues of material fact regarding the need for an application of force, the relationship between the need for and amount of force used, and the threat Officer Jamaica perceived. Officer Jamaica's Motion for Summary Judgment on Plaintiff's excessive force claim should be denied at this stage of the proceedings. This is not a recommendation that Officer Jamaica will not be entitled to qualified immunity as a matter of law in this case. Rather, due to disputed issues of material fact in the record, Officer Jamaica has not shown that he is entitled to immunity at the summary judgment stage. Whether Plaintiff suffered a grazed forehead or whether her injury occurred from being slammed into the cement are material to the objective reasonableness of Officer Jamaica's actions. These factual disputes are material to Officer Jamaica's entitlement to qualified immunity and they preclude qualified immunity at the summary judgment stage of these proceedings. *See Kinney v. Weaver*, 367 F.3d 337, 347 n.8 (5th Cir. 2004) (noting that "officials may sometimes be required to proceed to trial even though the ultimate resolution of th[e] factual disputes may show that they are entitled to qualified immunity"). Officer Jamaica's Motion for Summary Judgment should be denied with respect to his claim of qualified immunity on Plaintiff's excessive force claim and on her pendant state law claims for assault and battery.

### Recommendation

All of Plaintiff's claims against Officer Nordyke are *Heck*-barred, until *Heck* conditions have been met. Therefore, the Court recommends that the District Court **grant** Officer Nordyke's Motion for Summary Judgment. Plaintiff's false detention and false arrest and corresponding state law claims against Officer Jamaica are also *Heck*-barred, until *Heck* conditions have been met. Nevertheless, taking the facts most favorably to Plaintiff, Officer Jamaica is not entitled to summary judgment based upon qualified immunity on Plaintiff's excessive force and state law assault and battery claims.

Therefore, the Court further recommends that the District Court **grant in part** and **deny in part** Officer

Jamaica's Motion for Summary Judgment.

IT IS SO RECOMMENDED, January 5, 2009.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).